## Osterling, Appellant, *v.* Smith.

*Contract—Written contract—Evidence—Declarations.*

Where a person who is about to submit a proposal for a contract for the construction of a county court house, requests the owners of a quarry to submit him prices for stone work complete "in connection with the proposed court house," and in answer to the same the owners of the quarry make an offer in writing to furnish at specific prices unnamed quantities of their stone for the court

house, and nine months thereafter and after the contract is award-
ed, the contractor accepts the offer with a modification as to the
prices of two classes of stone, but without reference to quantities,
times of delivery, dates of payment or other matters, such accept-
ance does not bind him to take more of the stone than is shipped
upon his order from time to time; and declarations subsequently
made by him to the effect that he intended to have the owners of
the quarry furnish the stone for the whole contract are inadmis-
sible.

Argued May 3, 1915.    Appeal, No. 7, March T., 1916,
by plaintiffs, from judgment of C. P. Luzerne Co., Dec.
T., 1909, No. 136, for defendant non obstante veredicto
in case of D. P. Osterling and J. J. Zimmerman, doing
business as Columbia Stone Company v. Wilson J.
Smith.   Before RICE, P. J., ORLADY, HEAD, PORTER, HEN-
DERSON, KEPHART and TREXLER, JJ.   Affirmed.

Assumpsit for stone sold and delivered.    Before
MOSER, P. J., specially presiding.

At the trial it appeared that the plaintiff claimed to
recover the sum of $787.14 for stone delivered to Wilson
J. Smith and for $5,739.42 for stone shipped and de-
livered to Smith care Carlucci Stone Company.

The facts as stated by the trial judge were as follows:

Wilson J. Smith entered into an agreement with the
County of Luzerne to build a court house and appurte-
nances under date of July 31, 1902.   The said agreement
was approved by the judges of the Court of Common
Pleas of said county on the 9th day of March, 1903.

F. J. Osterling was the architect selected to prepare
plans and specifications for said building, which pro-
vided for a stone structure.

The Columbia Stone Company, the plaintiffs in this
action, were engaged in the stone business near Cleve-
land, Ohio.   They did business as a copartnership and
the members of the firm were, Mr. Osterling, the father
of the architect, Daniel P. Osterling, a brother of the
architect, and J. J. Zimmerman.

Following some negotiations with the plaintiffs relative to stone for the said court house the defendant received from them a proposal which was afterward accepted by the defendant completing the writing declared upon by the plaintiffs in this action.

The said proposal and acceptance reads as follows:

Cleveland, O., July 15, 1902.

Mr. Wilson J. Smith,
    Ross & Canal Streets,
        Wilkes-Barre, Pa.

Dear Sir:

We propose to furnish our Plum Creek Stone for the Luzerne County court house at prices as follows:

| | | |
|---|---|---|
| Block Stone, | 74c per cu. ft. | |
| Dimension Blk., | 79c " " " | |
| Stone S2S, | 99c " " " | .94 |
| Stone S4S, | $1.19 " " " | 1.14 |
| Columns, | 1.00 " " " | |

All the above prices f. o. b. cars at our quarry less freight to Wilkes-Barre, Pa.

We trust you will find these prices satisfactory and hoping to be favorably considered, we are,

        Very truly,
           COLUMBIA STONE COMPANY,
              By J. J. ZIMMERMAN.

Accepted with the understanding that the prices will be changed as above noted.

March 10, 1903.          WILSON J. SMITH.

Pursuant to the foregoing proposal and acceptance, the defendant purchased a quantity of stone from the plaintiffs at the prices therein named. The stone work was not completed by the defendant however, but was subletted to the Carlucci Stone Company on the 23d day of January, 1905. On October 3, 1903, the defendant notified the plaintiff not to ship any additional stone to

him except upon itemized orders and by letter of April 18, 1904, not to ship any more stone until further notice.

The plaintiffs insist that it was the intention of the parties to the above proposal and acceptance that all the stone needed for the court house and called for in the specifications must be purchased from the plaintiffs at the prices therein set forth; that they made extensive and costly preparations to furnish the same promptly and prepared much of the stone which remained on their hands for long periods of time and was finally disposed of at a sacrifice and loss.

Plaintiffs therefore make claim for storage; for loss on stone sawed and prepared; for loss of profits on full amount of stone required to complete the work according to plans and specifications; for loss of profit of sawing and for sum expended by way of preparations for carrying out the entire contract, in the purchase of machinery for equipping their quarries to promptly supply the large amount of stone required.

To sustain the aforesaid contention the plaintiffs offered to introduce in evidence the testimony of Daniel P. Osterling, that it was the understanding of the parties that the said proposal was to cover all the stone needed by the defendant for the court house; the drawings and specifications of the proposed court house; and the following communications from the defendant, to wit:

Wilkes-Barre, Pa., May 16, 1902.

Columbia Stone Co.,
        Cleveland, Ohio.
Gentlemen:

I should be pleased to have you furnish me a sample of your No. 1 sandstone as well as your lowest price as I desire to consider same in connection with proposed Luzerne Co. court house. Please express sample at once. I should be pleased to consider a proposition for the stone work complete.                 Yours truly,

WILSON J. SMITH.

Courtesy of Mr. F. J. Osterling, Architect.

Wilkes-Barre, Pa., May 28, 1902.

Columbia Stone Co.,

Cleveland, Ohio.

Gentlemen:

I am sending you under separate cover details and list of quantities of stone work required for the Luzerne County court house. I should be pleased to have you name me lowest figures f. o. b. cars Wilkes-Barre, Pa. I wish separate estimate for the stone delivered in the rough and cut and finished. Also estimate for carving separate.            Yours respectfully,

WILSON J. SMITH.

P. S.—Face of all stone to be finely cradled.

The defendant objected to the foregoing testimony, contending that it was an attempt to vary, alter or change a written contract by the introduction of parol testimony and further that the communications offered were too remote, and nothing more than preliminary negotiations. We sustained the objections and excluded the testimony. We also held, in effect, that under the said proposal and acceptance the defendant was liable only for stone delivered and accepted by him pursuant to his orders at the prices set out in the writing.

The plaintiffs alleged that the first shipment of stone was in pursuance of a verbal order given on or about the 14th day of August, 1903. The defendant denies any such order but admits that the stone shipped in August and September, 1903, was eventually accepted by him. The first specific written order for stone was dated October 19, 1903, and though the proposal and acceptance was not received by the plaintiffs until the 15th day of April, 1903, the defendant produced the following letter from the plaintiffs:

Cleveland, O., March 18, 1903.

Mr. Wilson J. Smith,

Wilkes-Barre, Pa.

Dear Sir:

We have received instructions from Mr. F. J. Oster-

ling, architect, to proceed at once and get out the stone for you for your new court house at Wilkes-Barre.

We thank you very kindly for the order and will give the same our most careful attention.

We understand that it is your intention to come here and we will be pleased to see you at any time.

With reference to the routing, we would ask if New York, Susquehanna & Western delivery and Lehigh Valley will be satisfactory to you, as we would like to have as many routes as possible to ship via; as we wish to take this question up with the R. R. Co. here we would request an early reply.

Thanking you and with regards, we are,

Very truly,

COLUMBIA STONE CO.,

By J. J. ZIMMERMAN.

In reply to this letter the defendant wrote:

Wilkes-Barre, Pa., March 23, 1903.

Columbia Stone Co.,

Cleveland, Ohio.

Mr. J. J. Zimmerman,

Dear Sir:

Answering your favor of the 18th inst., you will please note as I stated to Mr. Osterling and now advise you the price of the stone must be reduced to conform with quotations from the Cleveland Stone Co. I would suggest that no order be booked or any work done until I have examined the quarries and have taken the matter up in a business like way, so that there shall be no misunderstanding. As to the routing I will have no preference, the one you suggest will be satisfactory to me. The most direct route I should think would be Nickel Plate & Lehigh Valley, Lake Shore & Lehigh Valley, or Penna.                    Yours truly,

WILSON J. SMITH.

Defendant also wrote plaintiff as follows:

Wilkes-Barre, Pa., Sept. 3, 1903.
Columbia Stone Co.,
    Cleveland, Ohio.
Gentlemen:

I herewith return enclosed bill for stone, as I have not ordered any stone from your company, I therefore refuse to receive or accept it, or any stone from your company, until a better understanding is had in this matter.

Yours respectfully,

WILSON J. SMITH.

On January 23, 1905, Smith sublet the unfinished balance of the stone work of the building to the Carlucci Stone Company, the stone company agreeing to "furnish all material" necessary therefor.  Later, on October 10, 1905, he gave to the Carlucci Stone Company a power of attorney to act for him in the matter of removing certain hindrances to the completion of the stone subcontract caused by the refusal of the Columbian Fireproofing Company, a subcontractor for iron and fireproofing, to proceed with its subcontract.

The jury returned a verdict for plaintiffs for both items of claim.  Subsequently on a motion for judgment n. o. v. the court entered judgment on the verdict for the first item, but entered judgment for defendant n. o. v. on the second item, citing Musselman v. Stoner, 31 Pa. 265;· Shafer v. Senseman, 125 Pa. 310;  Hoffman v. Maffioli, 104 Wis. 630;  Wells v. Milwaukee & St. Paul Ry. Co., 30 Wis. 605.

*Errors assigned* were in entering judgment for defendant n. o. v., and in ruling out written declarations of the defendant.

*Thomas F. Farrell,* with him *John T. Lenahan* and *John R. Halsey* and *Watson & Freeman,* for appellant,

cited: Edwards v. Goldsmith, 16 Pa. 43; Barnhart v. Riddle, 29 Pa. 92; Miller v. Fichthorn, 31 Pa. 252; Morris's App., 88 Pa. 368; Dubois v. Bigler, Young & Co., 95 Pa. 203; Centenary M. E. Church v. Clime, 116 Pa. 146; Bole v. New Hampshire Fire Ins. Co., 159 Pa. 53; Cummins v. German American Ins. Co., 197 Pa. 61; Easton Power Co. v. Sterlingworth Railway Supply Co., 22 Pa. Superior Ct. 538; Bratten v. Catawissa R. R. Co., 211 Pa. 21; Croyle v. Cambria Land & Imp. Co., 233 Pa. 310.

*F. W. Wheaton,* with him *P. F. O'Neill,* for appellee.— That Smith had no intention to bind himself to take from plaintiffs all the stone required for the court house was shown conclusively by all of his subsequent conduct and correspondence.

If any of the terms of a contract are to be determined in the future, the contract is not complete until this is done: Smith v. Loag, 132 Pa. 301; Zoebisch v. Rauch, 133 Pa. 532.

OPINION BY HENDERSON, J., November 29, 1916:

The majority of the court are of the opinion that the judgment of the court below should be affirmed. The affidavit of defense on which a part of the argument of the appellants is based was not offered in evidence and no conclusion of fact from any declarations therein made could have been used by the jury to aid in the inquiry whether any additions were made to the contract other than the tender offered by the plaintiffs and the acceptance by the defendant. At the time of this tender of prices on July 15, 1902, the defendant had not contracted for the construction of the court house and it was not until the acceptance of the plaintiffs' offer as of March 10, 1903, that any liability of the defendant existed in favor of the plaintiffs. The plaintiffs claimed to have a contract as of that date and declined to enter into any contract in writing of a different tenor or import.

On March 17th F. J. Osterling, the architect, informed the plaintiffs that the defendant had that day awarded to them the contract for furnishing the required stone for the exterior of the building and on March 18th the plaintiffs in a letter to the defendant stated that they had received instructions from F. J. Osterling, the architect, to proceed at once and get out the stone for the new court house; the letter also contained the thanks of the plaintiffs for the order. It seems clear that the plaintiffs claimed at that time to have a contract with the defendant for the furnishing of the stone. Between the date of the plaintiffs' tender of price in July, 1902, and the date in March, 1903, when the architect notified the plaintiffs of the awarding of the contract to the latter, and the plaintiffs notified the defendant that they would proceed at once and get out the stone no qualifying agreement is shown to have been made or any change in price except that indicated by the letter of the architect of March 17th. The learned trial judge was of the opinion, therefore, that the offer of declarations of the defendant made at a later time that he intended to have the plaintiffs furnish stone for the whole contract, was irrelevant and this conclusion is supported by the evidence. The effect of the assignment by the defendant to Carlucci Bros. and of the defendant's power of attorney to them was well considered by the court and in accordance with the terms of the documents involved. The case was carefully tried and elaborately discussed by the learned trial judge in disposing of the plaintiffs' motion for a new trial and the defendant's motion for judgment non obstante as to the second special verdict and a repetition of the citations of authority would not be profitable here. Our conclusion is that the judgment be affirmed.